Anthony V. Thomas v. Commissioner. Estate of Joseph M. Thomas, Deceased, Anthony V. Thomas, Administrator v. Commissioner. George J. Thomas v. Commissioner.
Thomas v. Commissioner
Docket Nos. 34101, 34102, 34268, 34269.
United States Tax Court
T.C. Memo 1956-185; 1956 Tax Ct. Memo LEXIS 107; 15 T.C.M. (CCH) 983; T.C.M. (RIA) 56185; August 10, 1956
*107 Everett H. Davidson, Esq., 522 Broadway, Lorain, Ohio, for the petitioners. James F. Kennedy, Jr., Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Our holding as to the amounts of joint pool undeposited cash on hand of the petitioners at the beginning and end of the taxable years 1946, 1947 and 1948, set forth in Memorandum Findings of Fact and Opinion in these proceedings entered October 30, 1953 [, was, upon appeal by petitioners to the United States Circuit Court of Appeals for the Sixth Circuit, reversed by that court at . The proceedings are now before us under mandates from that court for the admission of further evidence and for the making of findings as to the amounts of the petitioners' joint pool undeposited cash on hand at the commencement and termination of each of the taxable years 1946 through 1948. Findings of Fact The facts which have been stipulated are found accordingly. Some of the facts set out below were found when the proceedings were before us originally and are set forth here to show the circumstances surrounding the question presented for *108 determination under the mandate and our action with respect thereto. Upon an investigation of the income tax liability of the petitioners for 1946 through 1949, the respondent determined that the books and records maintained by petitioners did not correctly reflect their income and that their income was to be computed on the basis of their increases in net worth plus other items for the respective years. In determining the increases in net worth of the petitioners, the respondent first determinated the net worth at the end of the years 1945, 1946, 1947, 1948, and 1949 of what is variously referred to in the record as the "pool," "joint pool," "partnership," and "three-way partnership," but which is hereinafter referred to as the joint pool. Assets included in the joint pool were those which the respondent determined were jointly owned by petitioners, that is, in which the petitioners each owned a one-third interest, at the end of the respective years. One-third of the net worth of the joint pool at the end of the respective years was treated as an asset of each petitioner at the end of such years. In determining the net worth of the joint pool, the amounts used by respondent *109 with respect to the petitioners' investments in the 333 Bar and the Thomas Grill were taken from the books and records maintained by petitioners for such businesses. The amounts used with respect to loans or mortgages and notes receivable were obtained from Central Bank through which the loans were either negotiated or which held them for collection purposes. The amounts used for cash on deposit in banks were taken from the records of the respective banks. In 1938 Joseph Thomas rented a safe deposit box at the Central Bank in Lorain, Ohio, and continued to hold it until his death on September 17, 1949, aboard the steamship "Noronic," which was destroyed by fire in Toronto, Canada. Prior to 1945 or 1946, the petitioners maintained ordinary safes at the 333 Bar and at the Thomas Grill for the safekeeping of money on hand. In 1945 or 1946 they purchased two time-clock safes for that purpose and placed one in the Bar and the other in the Grill. With the possible exception that prior to 1946 some small amounts of money of the joint pool occasionally may have been kept in Joseph's safe deposit box, no substantial amount of money of the joint pool was kept in the box prior to 1946. About *110 1946 or 1947, a substantial amount of the pool's money was taken from the safes in the Bar and in the Grill, placed in the box, and afterwards kept there. In each year thereafter, including 1949, an additional amount of the pool's money was taken from the safes, placed in the box and kept there. Anthony V. Thomas was appointed, and is acting, as administrator of Joseph's estate. On November 30, 1949, Anthony, as administrator, and Reno Collier, deputy auditor of the State of Ohio, opened Joseph's safe deposit box. The box was found to contain some miscellaneous papers of no value; some corporate stock certificates and some U.S. Government "E" bonds issued in the name of Joseph; some "E" bonds issued in the name of Anthony; and some "E" bonds issued in the names of four other individuals who are not involved in the instant proceedings. The safe deposit box also contained four canvas bags. Each of three of the bags were tied on the outside with cord and contained $50,000 in currency of large denominations, neatly folded and carefully wrapped in bundles. The fourth bag, which was not tied on the outside, contained $30,479 in currency, which was loosely folded and not wrapped in bundles. *111 From the position of the three bags in the back end of the safe deposit box and the deteriorated condition of the rubber bands around the bundles of money therein, these bags appeared to have been placed in the box at an earlier time than the fourth bag which appeared to have been maintained for current use. Thereafter and prior to the end of 1949, the total of $180,479 contained in the four bags was used as follows: $25,479 was deposited in the Citizens Home Savings Association, $25,000 was deposited in the Lorain Banking Company, and the remainder, $130,000, was used to purchase U.S. Government securities at the Central Bank. The records maintained by Central Bank as to Joseph's entries to his safe deposit box show that he entered it the following number of times during the indicated years: Times
Year
Entered
1945
4
1946
2
1947
4
1948
4
1949
2
The entries made in 1946 were made in March and December. Those in 1947 were made in February, May and July. Those in 1948 were made on January 7, 20, 21, and April 23. Those in 1949 were made on March 16 and April 8. In the returns filed by Joseph for the purpose of assessment of Ohio personal property taxes *112 for 1946 through 1949, no amount was reported as undeposited cash on hand or in safe deposit box or elsewhere on January 1 of the respective years. After the $180,479 of cash had been found in Joseph's safe deposit box, Harold B. Herron, a representative of the Ohio Tax Commissioner, began an investigation to determine whether, or to what extent, the cash should be subjected to Ohio personal property taxes. At a conference Herron held with Anthony and his attorney, and at which Anthony and his attorney submitted certain information, it was agreed that Joseph's liability for personal property taxes on account of the money should be determined on the basis that the safe deposit box contained the following sums of cash on the indicated dates: January 1
Amount
1946
$ 15,813
1947
36,897
1948
57,981
1949
115,365 Determinations of Joseph's personal property tax liabilities were made accordingly. As a result of the determinations for 1946 and 1947, a penalty of 50 per cent of the additional tax for those years became due. Anthony, as administrator, filed a petition for the reduction of the penalty, and, as a basis for the petition, stated that Joseph put into the safe *113 deposit box money which had been taken from the business, and that the accountant who prepared the property tax returns knew nothing about it. In determining the net worth of the joint pool at the end of the years 1945 through 1948, the respondent determined the following amounts as the joint pool's undeposited cash on hand at the end of the indicated years: End of
Year
Amount
1945
$ 17,394
1946
40,587
1947
58,531
1948
115,865
1949
The amounts of $17,394 and $40,587 used by respondent for 1945 and 1946, respectively, represented the amounts of cash on hand on January 1, 1946, and 1947 as shown in supplemental returns filed by Anthony for Joseph for the purpose of Ohio property tax for 1946 and 1947 and included the amounts of $15,813 and $36,897, which had been agreed upon at the conference between Anthony and his attorney and Herron as the amounts of cash in Joseph's safe deposit box on January 1, 1946, and January 1, 1947, respectively. The amounts of $58,531 and $115,865 used for 1947 and 1948, respectively, represented the amounts used by Herron as Joseph's cash on hand on January 1, 1948, and 1949, in determining Joseph's liability for Ohio property *114 tax for 1948 and 1949 and included the amounts of $57,981 and $115,365, which had been agreed upon at the conference between Anthony and his attorney and Herron as the amounts of cash in Joseph's safe deposit box on January 1, 1948, and January 1, 1949, respectively. When the proceedings were before us originally, we sustained the respondent's determination of the amounts of the joint pool's undeposited cash on hand on the critical dates in controversy. The amounts of the joint pool's undeposited cash on hand on the following indicated dates were as follows: January 1, 1946
$ 50,000
December 31, 1946
85,000
December 31, 1947
120,750
December 31, 1948
151,200
Opinion In reversing our action in sustaining the respondent's determination of the amounts of the joint pool's undeposited cash on hand on the crucial dates, the Circuit Court of Appeals for the Sixth Circuit said: "Since the Commissioner's determinations of cash on hand for the various years were based entirely upon these [Mr. Herron's] figures, his determinations must fall, and the cases must be remanded to the Tax Court to determine the amounts of cash on hand which the petitioners had at *115 the beginning of the year 1946 and of the three subsequent years. "It is recognized that such determinations may not be in figures as precise as Mr. Herron's convenient computation provided. However, there are lines of evidence even in the present record which suggest the proper approach to the problem, based, for example, upon the statement of Anthony Thomas to the Ohio State Tax Commission that the fund had been accumulated by withdrawing cash from the various businesses of the taxpayers." Subsequent to the receipt of the mandates in these proceedings, hearings were had and the parties have submitted, as further evidence, a stipulation of facts, the depositions of five witnesses, and more than 50 exhibits. The petitioners contend that the record as it now stands shows that the joint pool's undeposited cash on hand was in the following amounts on the indicated dates: January 1, 1946
$244,894.17
December 31, 1946
244,894.17
December 31, 1947
246,249.27
December 31, 1948
178,175.84
When the proceedings were before us originally, the petitioners, relying on certain testimony of Anthony and George, took the position that the undeposited joint pool cash on *116 hand prior to January 1, 1947 was in excess of $240,000. At the original hearing the petitioners placed in the record Exhibit 19 designated "Analysis of Cash Account (Partnership Pool of Thomas Bros.)" showing therein as the cash on hand at December 31, 1946, December 31, 1947 and December 31, 1948 the same amounts that the petitioners now contend were on hand on such dates. In connection with the exhibit the petitioners submitted the testimony of an employee of counsel for the petitioners who prepared the exhibit. but who had no actual knowledge of the matters to which the exhibit purported to relate. Such testimony shows that the exhibit represented merely the assumptions and conclusions of the employee as to the sources and disposition of the sums entering into the computation of the amounts shown therein as the cash on hand at the end of the respective years. Respecting this computation the Circuit Court of Appeals said: "Petitioners in another computation attempted to show that a fund of $240,000 in cash existed in 1945. Yet, in making this computation, it was implicitly assumed that they received no unreported income after that date from which additions could have been made *117 to the fund. Since that assumed the answer to the very question here in issue, the computation had no probative value." In connection with the deposition of one of their witnesses filed since receipt of the mandates, the petitioners have submitted in evidence an exhibit designated "Thomas Partnership Pool Cash on Hand" which is a restatement, in a slightly different form and in a different chronological order, of the contents of Exhibit 19. Further, petitioners also have placed in evidence a statement designated "Analysis of Cash Account (Partnership Pool of Thomas Bros.)." The contents of that statement are identical with those contained in Exhibit 19 and are merely rearranged in a different chronological order. Respecting the foregoing statement and exhibit, the petitioners have submitted no evidence from which we can find that the amounts shown therein as the cash on hand at the end of the years 1946, 1947 and 1948 correctly reflected, or even approximately reflected, the pool's undeposited cash on hand at the end of such years. In such a state of the record the exhibit and statement have no more probative value than Exhibit 19, which the Circuit Court of Appeals found had none. *118 From a consideration of the record, including both that made originally and that made since receipt of the mandates, we are unable to find that the pool's undeposited cash on hand on January 1, 1946 and at the end of the years 1946 through 1948 was in the amounts now contended for by the petitioners. Except for some comparatively small amounts of cash on hand at the 333 Bar and the Thomas Grill at the end of some of the years involved herein, the petitioners maintained no record as to the amount of the pool's undeposited cash on hand at any date or dates. In view of this the respondent takes the position that, since it is not known how much cash was actually accumulated in any year and how much was actually on hand on any of the crucial dates, the proper solution of the question before us is to make an allocation of the $180,479 found in Joseph's safe deposit box to the dates of January 1, 1946 and December 31 of the years 1946 through 1948. Under his proposed allocation, the respondent asks that we find that the pool's cash on hand on the indicated dates was as follows: January 1, 1946
$ 47,470
December 31, 1946
94,940
December 31, 1947
142,410
December 31, 1948
144,880
*119 From the evidence presented, we are satisfied that the pool had a substantial amount of cash on hand at the end of 1945 and the beginning of 1946. In 1945 or 1946, for the better protection of their cash, the petitioners acquired safes equipped with time clocks. However, we fail to find in the record any basis for concluding that by the beginning of 1946 the pool had accumulated the entire $180,479 contained in four bags found in Joseph's safe deposit box when it was opened on November 30, 1949. The evidence shows that while possibly some small amounts of the pool's money occasionally may have been kept in the box prior to 1946, it was not until 1946 or 1947, when a substantial sum was taken from the safes, that a substantial amount of its money was placed in the box, and thereafter kept there. The evidence further shows that in each subsequent year, including 1949, an additional amount of the pool's money was taken from the safes, was placed in the box, and thereafter kept there. From a consideration of all the evidence of record bearing on the point in the light of the opinion of the Circuit Court of Appeals, we have determined the amount of the pool's undeposited cash on hand *120 on the crucial dates as best we can. . The results appear in our findings of fact. Decisions will be entered under Rule 50.